**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 95-5589

MICHAEL ANDREW MASON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                    No. 95-5608

MICHAEL ANDREW MASON,
Defendant-Appellee.

Appeals from the United States District Court
for the Western District of Virginia, at Charlottesville.
Glen M. Williams, Senior District Judge.
(CR-94-61)

Argued: December 6, 1996

Decided: February 12, 1997

Before WILKINSON, Chief Judge, LUTTIG, Circuit Judge, and
DAVIS, United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** Christopher Campbell Booberg, MORCHOWER, LUXTON & WHALEY, Richmond, Virginia, for Appellant. Donald Ray Wolthuis, Assistant United States Attorney, Roanoke, Virginia, for Appellee. **ON BRIEF:** Michael Morchower, MORCHOWER, LUXTON & WHALEY, Richmond, Virginia, for Appellant. Robert P. Crouch, Jr., United States Attorney, Carolyn Furrow, Third Year Law Student, Roanoke, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Michael Andrew Mason was charged with one count of conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846 and nine counts of possession with intent to distribute cocaine base or distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, based on Mason's participation in a conspiracy to import cocaine and cocaine base from Washington, D.C. and parts of Virginia for distribution in the Harrisonburg and Staunton, Virginia, areas. The government alleged that Mason was a mid-level drug dealer in the conspiracy who distributed smaller quantities of crack cocaine to lower level dealers and, on occasion, negotiated and brokered distributions.

On September 29, 1994, Mason was granted pretrial supervision, with conditions that included that he have no contact with his co-defendants. At a continuation of bond hearing on January 3, 1995, Deputy Jo Ellen Emsweiler of the Rockingham County Sheriff's Department testified that she and Investigator Kurt Boshart of the Harrisonburg Police Department saw Mason in an automobile with co-defendant Justin Mason on November 8, 1994. However,

2

Emsweiler testified that she did not see where Michael and Justin Mason were going or where they were coming from, and because Boshart had taken the notes of the incident, Emsweiler could not recall the type of car or the license plate number. J.A. at 47-49. Furthermore, the surety for Michael Mason's bond testified that Michael Mason was elsewhere at the time in question. Therefore, the court found that there was insufficient evidence to find that Mason violated the terms of his pretrial release. J.A. at 63-64.

During a jury trial, the government established that 86.39 grams of cocaine base were discovered in Mason's car, and several of Mason's co-defendants testified detailing Mason's role in the conspiracy. In addition, Officer Boshart and Deputy Emsweiler testified that they saw an illegal drug transaction between Michael and Justin Mason and a government informant. However, Michael Mason testified that he was not the person seen by the officers. When Mason's attorney attempted to question Mason on redirect examination regarding the bond revocation hearing, the district court sustained the government's objection to that line of questioning. Mason was found guilty of one count of conspiracy and one count of possession with intent to distribute or aid and abet possession with intent to distribute, but was acquitted on all other counts.

The Presentence Report stated that Mason had an offense level of 34 and a criminal history category of I and determined that under the Sentencing Guidelines the sentencing range was 151 months to 188 months. However, the district court departed downward from the guidelines and sentenced Mason to 120 months.

Mason appeals, arguing that his Sixth Amendment right to confrontation was violated by the district court's exclusion of testimony regarding the bond revocation hearing. The United States cross-appeals, arguing that the district court erred in granting a downward departure from the sentencing guidelines range.

I.

During redirect examination, Mason's counsel attempted to question Mason regarding the bond revocation hearing. According to Mason's counsel, the failure of the district court to find Mason in vio-

3

lation of the terms of his parole demonstrated that Emsweiler and Boshart had "misidentified" Mason in the past. However, the district court sustained the government's objection, calling the bond revocation hearing a "peripheral matter" and concluding that defense counsel had not laid a foundation for a misidentification argument during cross-examination of Emsweiler and Boshart. J.A. at 226-28.

The district court did not violate Mason's right to confront witnesses brought against him. The government's mere failure to carry its burden of proving a bond violation does not, in and of itself, establish a "misidentification" of Mason, and Mason failed to develop on cross-examination of Emsweiler and Boshart any foundation for an argument that these officers had previously misidentified him. As the district court correctly concluded that the bond revocation hearing was merely a "peripheral matter."

II.

Under 18 U.S.C. § 3553(b), the district court must impose a sentence within the range provided by the sentencing guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." No such circumstance exists in this case.

The district court stated clearly that the probation officer correctly determined the amount of the drugs to be attributed to Mason. J.A. at 287. In so doing, the district court noted that, under the Sentencing Guidelines, a preponderance of the evidence test applies to attribution of drug quantities to the defendant. Therefore, the drug quantities attributed to Mason were greater than the quantities seized in the two transactions for which Mason was convicted. As a result, Mason's sentencing range was the same as it would have been had he been convicted on all of the charges against him. The court then departed downward from the guidelines range, stating:

> If the defendant had been convicted on every one of these counts, we would be in the exact same posture . . . .

4

Now the jury, of course, didn't know this. An ordinary citizen wouldn't understand it. This is the way the sentencing guideline works . . . . And that bothers me about it. But I have to find in all conscience that the probation officer has correctly computed in a reasonable manner the amount of the drugs to which he should be attributed.

J.A. at 287-88. The court continued:

There is nothing mentioned in [the Presentencing Report] about downward or upward departure. Nothing is argued on either side. Based on that -- however, I am going to depart downward and I don't know whether this will stand up or not. But I want to give my reasons.

It's been speculated here by the attorneys on both sides as to what the jury was thinking in this case and I happen to by accident be walking out with the jury after this case and I overheard some remarks. It was the feeling of this jury . . . [that] they didn't want this young man to be serving that much sentence and they found him not guilty on certain counts giving him the benefit of the doubt thinking they were giving him a less harsh sentence. . . .

I don't know of any law, frankly, permitting a downward departure. But the comments that were made by the jury was they hoped that this young man wasn't going to be receiving the amount of time up in the range that they had heard discussed in this case. One of them even asked me -- had identified me as he happened to be walking out. What kind of sentence will this young man get? And I told him, you know, I couldn't even speculate on it. I said, you know, it's based on guidelines.

J.A. at 287-90.

As the district court itself recognized, its downward departure was not based upon any legally cognizable mitigating factor not taken into account by the sentencing guidelines, and, accordingly, was unautho-

5

rized. As the parties suggest, only two mitigating factors can reasonably be discerned from the district court's explanation -- that the court departed downward because the guideline range did not reflect the fact that Mason was acquitted on some of the counts, or that the court departed downward because of Mason's age. Neither of these reasons provides a legally cognizable basis for downward departure.

As the district court candidly acknowledged, the amount of the drugs was correctly computed. The fact that Mason would have received no greater sentence had he been convicted on additional counts does not provide a basis for departing from the proper guideline range for those counts on which Mason was convicted, because we have held that the Sentencing Guidelines provide for consideration of relevant conduct even when the defendant was not charged with, or has been acquitted of, that conduct. United States v. Mullins, 971 F.2d 1138, 1143-44 (4th Cir. 1992); United States v. Isom, 886 F.2d 736, 739 (4th Cir. 1989).

Nor could Mason's age provide a basis for downward departure because we have held that the age of the offender has been adequately taken into account by the guidelines and therefore is not a permissible grounds for departure. United States v. Summers, 893 F.2d 63, 69 (4th Cir. 1990); see U.S.S.G. § 5H1.1 ("Age (including youth) is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. Age may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration."). In fact, in Summers we vacated the district court's downward departure because the district court "clearly erred" in basing its departure on the fact that the defendant was twenty-three years old, the same age as Mason was when the presentence report was filed. Summers, 893 F.2d at 69; J.A. at 300-01.

CONCLUSION

For the reasons stated herein, we affirm the appellant's conviction, but we vacate the sentence and remand to the district court for sentencing consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

6